**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KAITLYN HOWARD, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CAUSE NO. 2:25-CV-339-GSL-JEM |
| | ) | |
| OFFICER SEAN LIESENFELT, *ET AL.*, | ) | |
| DEFENDANTS. | ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants OFFICER SEAN LIESENFELT, VALPARAISO POLICE DEPARTMENT, and CITY OF VALPARAISO, by and through their attorneys MATTHEW S. CLARK and JOSEPH W. SMITH of CLARK JOHNSON & KNIGHT, LTD., and pursuant to Northern District of Indiana Local Rule 7-1(b)(1), provide the following memorandum of law in support of their Motion to Dismiss:

## I.    INTRODUCTION.

In this action, Plaintiff claims that Valparaiso Police Officer Sean Liesenfelt deprived her of her Fourth Amendment right to be free from unreasonable seizure.  Plaintiff claims that Officer Liesenfelt initiated a temporary investigative detention without reasonable suspicion, arrested her without probable cause, and used excessive force.  Plaintiff, however, has been convicted in state court of several offenses arising from this arrest.  That conviction bars Plaintiff's claims under both *Heck v. Humphrey* and state-law preclusion principles.  Additionally, Officer Liesenfelt is entitled to qualified immunity.  The Court should therefore dismiss the Complaint.

## II.    MATERIAL ALLEGATIONS OF THE COMPLAINT AND MATTERS SUBJECT TO JUDICIAL NOTICE.

On July 29, 2023, Plaintiff was driving her neighbor's truck and pulled into her neighbor's driveway.  ECF #1, ¶9.  She exited the truck and was crossing the yard to her house

when Officer Liesenfelt pulled into her neighbor's driveway. ECF #1, ¶10. Officer Liesenfelt ordered Plaintiff to stop. ECF #1, ¶11. Officer Liesenfelt detained Plaintiff and eventually arrested her. ECF #1, ¶16.

Officer Liesenfelt detained Plaintiff because the Flock camera had alerted him that the owner of the vehicle that Plaintiff was driving had a suspended license. ECF #1, ¶19. At one point during the arrest, Officer Liesenfelt forced Plaintiff to the ground. ECF #1, ¶26. When another officer arrived, while Plaintiff was still on the ground, Officer Liesenfelt shot Plaintiff with his Taser. ECF #1, ¶29.

On July 31, 2023, as a result of this arrest, the State of Indiana charged Plaintiff with:

- Battery of a public safety while the official is engaged in the official's official duty (Count I);

- Intimidation by communicating a threat to Officer Liesenfelt, with the intent that he be placed in fear of retaliation for a prior lawful act, and the threat was communicated because of Officer Liesenfelt's occupation or based on an act taken while within the scope of his occupation (Count II); and

- Resisting law enforcement by forcibly resisting, obstructing, or interfering with a law enforcement officer while said officer was lawfully engaged in his duties (Count III).

Exhibit A. The affidavit for probable cause for the battery charge stated:

> On the 29th day of July, 2023, at approximately 12:46 p.m., I had occasion to observe KAITLYN D HOWARD at 256 Butternut Ln., Valparaiso, Porter County, Indiana, on 7/29/2023 touch another person, to-wit: Ofc. S. Liesenfelt in a rude, insolent, or angry manner, to-wit: throwing a lit cigarette at Ofc. S. Liesenfelt's right face cheek and striking Ofc. S. Liesenfelt's face with an open hand. Furthermore, Ofc. S. Liesenfelt was a public safety official engaged in the execution of his/her official duties.

> AND the touching resulted in bodily injury to Ofc. S. Liesenfelt, to-wit: small superficial burn creating a red circle shaped mark on the right face cheek.

Exhibit A.  The affidavit for probable cause for the intimidation charge stated:

> On the 29th day of July, 2023, at approximately 12:46 p.m., I had occasion to observe KAITLYN D. HOWARD at 256 Butternut Ln, Valparaiso, Porter County, Indiana, on 07/29/2029 communicate a threat to Ofc. S. Liesenfelt with the intent that he/she be placed in fear of retaliation for a prior lawful act, by stating "I have fucking anger issues, I will fucking hit you.  I don't care if you're a cop" and "I'm gonna kick you in the balls" after physically resisting.

> AND the victim was a law enforcement officer, and the threat was communicated because Ofc. S. Liesenfelt is a law enforcement officer or based on an act taken by Ofc. S. Liesenfelt within the scope of employment.

Exhibit A.  The affidavit for probable cause for the resisting charge stated:

> On the 29th day of July, 2023, at approximately 12:46 p.m., I had occasion to observe KAITLYN D HOWARD at 256 Butternut Ln, Valparaiso, Porter County, Indiana, who did forcibly resist, obstruct or interfere with OFC. S. LIESENFELT while said officer was lawfully engaged in his/her duties.

> He/She refused to follow verbal orders to stop fleeing and attempted to enter the vehicle she was previously occupying when advised not to do so. She then started pulling away from me when I attempted to physically subdue her.  Katilyn then continued to pull away and strike me while I held her arms behind her back.  Kaitlyn then threw a lit cigarette at my face and struck me with an open hand.  After displaying my Taser and pointing it at her with warnings that she would be tased while telling her several times to turn over onto her stomach, she continued to resist.  I then discharged my Taser at Kaitlyn causing neuromuscular incapacitation. She was then restrained in handcuffs.

Exhibit A.

On July 31, 2023, Judge Jeffrey Clymer of the Porter Superior Court found probable cause for all three charges.  Exhibit B.

On May 17, 2024, Plaintiff filed a motion to dismiss.  Exhibit C.  In her motion to dismiss, Plaintiff argued that Officer Liesenfelt did not have reasonable suspicion to detain

Plaintiff, so everything that happened during the stop is inadmissible.  Exhibit C at 3.  Plaintiff argued that, because the Flock camera system does not tell the officer who is driving the vehicle, the Flock camera alert telling Officer Liesenfelt that driver's license of the vehicle owner was suspended did not establish cause to detain her.  Exhibit C at 2-3.

The State initially responded that Plaintiff's motion to dismiss was untimely.  Exhibit D.  The State later filed a supplemental response, arguing that reasonable suspicion existed for a temporary investigation detention in order to determine whether the person driving the vehicle was driving on a suspended license.  Exhibit E.

On October 7, 2024, following a hearing, the court denied Plaintiff's motion to dismiss.  Exhibit F.

The case proceeded to trial on December 1, 2025.  Exhibit G.  At trial, Officer Liesenfelt testified as follows about Plaintiff physically resisting him:

> Q. Did she [i.e. Plaintiff] say anything when she made the last attempt to open the door?
>
> A. She said, "You need to learn to trust," and then turned towards the door and said, "Watch this," and reached for the door handle.
>
> Q. What did you do then?
>
> A. I approached her closer to avoid her from getting inside the truck to ensure she couldn't grab anything out of it in case there was some sort of weapon in there and then she started to back up.  And as I placed my hand on her arm to prevent her from going inside the vehicle, she then ripped her arm out of my hands.

Exhibit H at 114:8-19.  Officer Liesenfelt testified as follows about Plaintiff threatening to hit him:

> Q. At what point did you determine she was under arrest?
>
> A. She was not obeying an order by a law enforcement officer and as she began to back up, she pointed at me and made some intimidating statements.

- 4 -

> Q. What were those statements?
>
> A. She said, "I have fucking anger issues.  I will fucking hit you.  I don't care if you're a cop."

Exhibit H at 114:22 – 115:4.[1]  Officer Liesenfelt testified as follows about Plaintiff continuing to physically resist him:

> Q. So she attempts to get in the vehicle, you grab her arm, she backs up, makes that statement towards you; what happens at that point?
>
> A. At that point, she's under arrest.  I continue approaching her as she is backing away.  I tell her that she is.  She then walks to the front of the truck and we get into a scuffle.
>
> …
>
> Q. Is she being compliant with you at the front of the vehicle as you're trying to restrain her?
>
> A. No.
>
> Q. Can you describe her actions?
>
> A. Yes.  As I tried to subdue her by placing my hands on her arms, she's turned towards the front of the truck on the passenger side in front of the front bumper.  I'm trying to control her hands so that she doesn't hit me.  I leaned my right thigh into her hip by twisting by [sic] body and keeping her in position.  It was either right or left.  I apologize.  I can't recall.  To keep her in position so she couldn't kick back at me.  And she continued to pull away and be aggressive and make statements to let go of her.

Exhibit H at 116:3-16.  Officer Liesenfelt testified as follows about Plaintiff throwing a lit cigarette into his face:

> Q. Did you [sic] attempt to keep her pinned up against the vehicle until backup arrived work?
>
> A. No.
>
> Q. Why not?

---

[1] The jury also viewed Officer Liesenfelt's body camera video, which showed Plaintiff making this threat to him.

> A. Eventually she's slipped out of my grip on the left side.  I asked her to put down the cigarette because I noticed that it was still in her left hand.  She then turned, twisted the top portion of her body turning around and gave me a profile view of the top of her body, said, "Fuck you," and threw the cigarette at my face.

Exhibit H at 116:25 – 117:10.  Officer Liesenfelt testified as follows about Plaintiff slapping him in the face:

> Q. Okay.  Did she at any point after that make further contact – physical contact with you?
>
> A. She did.
>
> Q. Can you describe that?
>
> A. After she threw the cigarette, I then began to move her off the truck.  As a I did so, she slapped me also on the right side of my face with that left hand that she had free….

Exhibit H at 117:20 – 118:2.  Officer Liesenfelt testified as follows about Plaintiff threatening him when he unholstered his Taser:

> Q. At any point did you unholster a weapon or device from your belt?
>
> A. I did.
>
> Q. What was that?
>
> A. It was my taser.
>
> …
>
> Q. Okay.  How did she respond to you unholstering your taser?
>
> A. She continued to be angry and stated that if I tased her that she would kick me in the balls.

Exhibit H at 122:8-18.

The jury found Plaintiff guilty on all three counts.  Exhibit I.

On February 23, 2026, the court entered the Sentencing Order.  Exhibit J.

Plaintiff did not appeal the conviction.

III.    ARGUMENT.

The standards for ruling on a motion to dismiss under Rule 12(b)(6) are well-established. In order to survive a motion to dismiss for failure to state a claim, the factual allegations of the complaint must "'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp v. Twombly* 550 U.S. 544, 570 (2007). "In reviewing the sufficiency of a complaint under the plausibility standard…, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). A claim is facially plausible if the well-pled allegations of the complaint create a "reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. In ruling on a motion to dismiss, the Court may consider state-court records without converting the motion into a motion for summary judgment under Rule 12(d). *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994).

### A.  HECK V. HUMPHREY BARS PLAINTIFF'S CLAIMS.

In *Heck v. Humphrey*, the Supreme Court held that, if a Section 1983 claim would necessarily imply the invalidity of a state-court criminal conviction, that claim cannot be brought until the conviction has been reversed, vacated, pardoned, or subjected to a writ of habeas corpus. 512 U.S. 477, 487 (1994). Plaintiff's claims are barred under *Heck v. Humphrey* because they would necessarily imply the invalidity of her convictions.

### 1.  EXCESSIVE FORCE.

Plaintiff's excessive force claim would necessarily imply the invalidity of her conviction for resisting law enforcement. It is therefore barred under *Heck v. Humphrey*.

In *Helman v. Duhaime*, the Seventh Circuit held that *Heck* bars an excessive force claim, where the plaintiff was convicted of resisting law enforcement under Indiana law, because the statute criminalizes resisting a law enforcement officer who "'is lawfully engaged in the execution of [his] duties….'" 742 F.3d 760, 763 (7th Cir. 2014) (alteration in original); *see also* IC 35-44.1-3-1(a) & (a)(1) ("A person who knowingly or intentionally … forcibly resists … a law enforcement officer … while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement….").  Under Indiana law, a person may not be convicted under this statute if the officer is using excessive force.  *Helman*, 742 F.3d at 763 (citing *Shoultz v. State of Indiana*, 735 N.E.2d 818, 823-25 (Ind. App. 2000)).  Accordingly, if a person is convicted of resisting law enforcement, that necessarily establishes that the officer was not using excessive force when the person resisted.  *Id.*  A finding in a Section 1983 action that the officer used excessive force would therefore necessarily imply that the person should not have been convicted for resisting that officer, and *Heck* bars the claim while the conviction remains extant.  *Id.*

That holding applies here.  Plaintiff alleges that Officer Liesenfelt "forced Kaitlyn to the ground" and "assaulted Kaitlyn without legal cause of [*sic*] justification."  ECF #1, ¶¶26-27.  Plaintiff alleges that Officer Liesenfelt used excessive force in doing so.  ECF #1, ¶¶34-37, ¶¶43-44, ¶¶57-60.  However, Plaintiff was convicted of resisting law enforcement, which necessarily establishes that Officer Liesenfelt was not using excessive force when Plaintiff was resisting.  Under *Helman*, *Heck* bars Plaintiff's excessive force claim.

Additionally, Plaintiff's conviction for intimidation bars her excessive force claim as it relates to the use of the Taser.  Under Indiana law, "A person who communicates a threat with the intent … that another person be placed in fear of retaliation for a prior lawful act … [or] that

- 8 -

another person be placed in fear that the threat will be carried out, if the threat is a threat described in … subsection (c)(1) through (c)(5) … commits intimidation…." IC 35-45-2-1. The threats described in subsection (c)(1) through (c)(5) of IC 35-45-2-1 include threats to "unlawfully injure the person threatened," IC 35-45-2-1(c)(1), and to "commit a crime," IC 35-45-2-1(c)(3).

The testimony at Plaintiff's criminal trial established that, when Officer Liesenfelt unholstered his Taser, Plaintiff threatened that, if Officer Liesenfelt tased her, "she would kick [him] in the balls." Exhibit H at 122:8-19.

Plaintiff's conviction for intimidation raises the *Heck* bar for two reasons.

First, the jury could have convicted Plaintiff based on the testimony that she threatened to kick Officer Liesenfelt in the testicles if he tased her. But, under the statute, a jury may only convict for intimidation if the person intended to place someone under fear of retaliation for a prior *lawful* act. IC 35-45-2-1(a)(2). In order to convict Plaintiff for intimidation based on this statement, the jury must have concluded that it would have been lawful for Officer Liesenfelt to use his Taser. Thus, the *Helman* reasoning applies, and Plaintiff's excessive force claim related to the use of the Taser is barred unless and until her conviction is vacated.

Second, the jury could have convicted Plaintiff based on the threat to unlawfully injure Officer Liesenfelt or commit a crime by kicking him in the testicles. IC 35-45-2-1(a)(4)(A), -1(c)(1), -1(c)(3). The *Helman* reasoning applies here, as well. As established in *Helman*, resistance is only a crime if the officer is lawfully engaged in the execution of their duties. A law enforcement officer using excessive force is not lawfully engaged in the exercise of their duties, so resisting an officer who is using excessive is not a crime. *Helman*, 742 F.3d at 763. A finding in this action that Officer Liesenfelt used excessive force in tasing Plaintiff would

therefore necessarily imply that Plaintiff should not have been convicted of intimidation, and the *Heck* bar applies.

The Court should therefore dismiss Plaintiff's excessive force claims.

### 2. FALSE ARREST.

Plaintiff's false arrest claims are likewise barred under *Heck v. Humphrey* until such time as her convictions have been vacated.

Plaintiff's convictions bar her claim that the initial temporary detention was unreasonable. Although the *Heck* bar does not generally apply to false arrest claims, it does so here because the state court denied Plaintiff's motion to dismiss, which was based on the argument that Officer Liesenfelt did not have reasonable suspicion to detain Plaintiff, so anything that occurred subsequent to her initial detention is inadmissible. If there was a finding in this action that Officer Liesenfelt did not have reasonable suspicion for the initial detention of Plaintiff, that would necessarily imply that the state court erred in denying the motion to dismiss and, consequently, would necessarily imply that the case never should have gotten to the jury.

Plaintiff's convictions also bar her false arrest claim. Again, even though the *Heck* bar generally does not apply to false arrest claims, it does so here. The jury could have convicted Plaintiff for resisting law enforcement by (1) pulling her arm away from Officer Liesenfelt when he was trying to stop her from reaching into the truck, (2) physically resisting Officer Liesenfelt as he held her against the side of the truck, (3) throwing a lit cigarette into Officer Liesenfelt's face, or (4) slapping Officer Liesenfelt. The jury could have convicted Plaintiff for battery of a public safety official for (1) throwing the lit cigarette into Officer Liesenfelt's face or (2) slapping him. The jury could have convicted Plaintiff for intimidation for (1) threatening to hit Officer Liesenfelt after he stopped her from reaching into the truck or (2) threatening to kick

Officer Liesenfelt in the testicles if he tased her. Any one of these actions would support probable cause for an arrest. A finding that Officer Liesenfelt arrested Plaintiff without probable cause would necessarily imply that Plaintiff did not commit, and therefore could not have been convicted for, *any* of these actions. The *Heck* bar therefore applies.

A finding that Officer Liesenfelt did not have probable cause to arrest Plaintiff would necessarily imply that the state jury should not have convicted Plaintiff. The Court should therefore dismiss Plaintiff's false arrest claims.

### B. COLLATERAL ESTOPPEL BARS ALL OF PLAINTIFF'S CLAIMS.

In addition to the *Heck* problem, Plaintiff's convictions conclusively establish that Officer Liesenfelt did not deprive Plaintiff of her constitutional rights.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, provides that the records of judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." This statute obligates federal courts, in actions asserting claims under Section 1983, to afford collateral estoppel effect to state-court judgments when those judgments would be afforded collateral estoppel effect in the state where they were rendered. *Allen v. McCurry*, 449 U.S. 90, 96-97 (1980).

Under Indiana preclusion law,

> Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument.

*Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005) (citations omitted).

> Three conditions lay the foundation for collateral estoppel:  (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) the party to be estopped was a party or the privity of a party in the prior action….  In deciding whether issue preclusion is appropriate, Indiana courts also examine two salient considerations—(a) whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and (b) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.  These twin considerations shape whether collateral estoppel is fitting in a case.

*Miller v. Patel*, 212 N.E.3d 639, 646-47 (Ind. 2023) (citations and internal quotation marks omitted).

The requirements for preclusion are satisfied here.

There is no question that the judgment is a final judgment on the merits in a court of competent jurisdiction.

The issues are the same in the criminal case and in this action.  Plaintiff's actions on the date in question are at issue in both proceedings.  In the criminal case, the State of Indiana had to prove that Plaintiff engaged in conduct that violated the relevant statutes.  Here, Plaintiff must prove that she *did not* engage in conduct that would even have established probable cause for a violation of the relevant statutes.  Additionally, the issue of reasonable suspicion for the initial detention is at issue in both proceedings.  Plaintiff placed that inquiry into issue in the criminal case by filing a motion to dismiss which asserted that Officer Liesenfelt did not have reasonable suspicion for the initial stop.  Reasonable suspicion for the initial stop is at issue in this action because Plaintiff claims that the initial stop violated the Fourth Amendment because Officer Liesenfelt lacked reasonable suspicion.  These issues were actually litigated, so this related requirement for recognition of issue preclusion is satisfied, as well.

There is no question that Plaintiff (who is the party to be estopped in this action) was a party to the prior action.

- 12 -

Finally, Plaintiff had a full and fair opportunity to litigate the issues, and there are no considerations that would make application of issue preclusion unfair.  The Indiana Supreme Court discussed these factors in *Kimberlin v. DeLong*, where it held that the procedural protections in criminal cases establish a full and fair opportunity to litigate the issues, and that there is no unfairness in applying issue preclusion.  637 N.E.2d 121, 125 (Ind. 1994).

The resolutions of the issues in the state criminal proceeding are fully dispositive of Plaintiff's claims in this action.

Because the issue of reasonable suspicion for the initial stop was actually litigated in the criminal case, the resolution of that issue precludes Plaintiff from claiming in this action that Officer Liesenfelt did not have reasonable suspicion for the initial stop.

Because the jury found that Plaintiff resisted, intimidated, and battered Officer Liesenfelt, Plaintiff cannot claim in this action that Officer Liesenfelt did not have probable cause to arrest her for committing those acts.

Because the jury found that Plaintiff resisted Officer Liesenfelt in the lawful exercise of his law enforcement duties, Plaintiff cannot claim in this action that Officer Liesenfelt was using excessive force when she resisted him.

Because the jury found that Plaintiff resisted, intimidated, and battered Officer Liesenfelt, Plaintiff cannot claim that it was objectively unreasonable for Officer Liesenfelt to use his Taser. It is well-established that intermediate force, including Tasers, can be used on suspects who are actively resisting arrest.  *Abbott v. Sangamon County*, 705 F.3d 706, 727 (7th Cir. 2013). Plaintiff's convictions conclusively establish that she was actively resisting arrest.  Tasers can also generally be used against subjects who threaten to actively resist law enforcement officers' attempts at physical control.  *See id.* at 730.  Plaintiff threatened to kick Officer Liesenfelt in the

testicles if he used his Taser; this was after she had already threatened to hit him, warned him that she has "anger issues," warned him that she did not care if he was a cop, physically resisted all efforts to restrain her, thrown a lit cigarette in his face, and slapped him. A reasonable officer in these circumstances could have concluded that using a Taser to subdue Plaintiff, instead of initiating another up-close physical confrontation with her, was justified. Plaintiff's convictions preclude her from relitigating these facts, which are dispositive of her excessive force claim related to the use of the Taser.

An Indiana court would recognize that Plaintiff's conviction precludes relitigation of all necessary issues that were actually litigated in the criminal case. Those issues include the existence of reasonable suspicion for the initial detention, Plaintiff's resistance of Officer Liesenfelt in the lawful execution of his duties, Plaintiff's intimidation of Officer Liesenfelt, and Plaintiff's battery of Officer Liesenfelt. Accordingly, federal courts are obligated to recognize that Plaintiff's conviction precludes relitigation of those issues. The resolutions of those issues in the state court are fully dispositive of Plaintiff's false arrest and excessive force claims in this action. The Court should therefore dismiss the Complaint in its entirety.

## IV.    CONCLUSION.

For the above and foregoing reasons, the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ Joseph W. Smith
Joseph W. Smith (#29663-64)

- 14 -

CLARK JOHNSON & KNIGHT, LTD.
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
Phone: 219.322.0830; Fax: 219.322.0834
Email: JSmith@cjklaw.com
Attorneys for Defendants, Officer Sean Liesenfelt,
Valparaiso Police Department, and City of Valparaiso

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

- Matthew S. Clark, mclark@cjklaw.com; kstocco@cjklaw.com
- Joseph W. Smith, jsmith@cjklaw.com; shazi@cjklaw.com

**MANUAL NOTICE:** Kaitlyn Howard, 298-3 East 1300 North, Chesterton, IN 46304

/s/ Joseph W. Smith
JOSEPH W. SMITH (#29663-64)

26-06-01 MTD memo 8568